UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES D. MARSHALL,

        Plaintiff,

    -v-                             5:24-CV-527

PAROLE OFFICER VAUGHN,
PAROLE OFFICER KEVIN
HARMER, POLICE OFFICER
COSGROVE, POLICE OFFICER J.
BALYSZAK,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

JAMES D. MARSHALL
Plaintiff, *pro se*
16-B-0778
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY 12051

GOLDBERG SEGALLA LLP        MOLLY M. RYAN, ESQ.
Attorneys for Defendants          DENNIS SCANLON, ESQ.
Police Officer Cosgrove and
Police Officer J. Balyszak
5786 Widewaters Parkway
Syracuse, NY 13214

DAVID N. HURD
United States District Judge

## **DECISION and ORDER**

## I. **INTRODUCTION**

Plaintiff James D. Marshall ("Marshall" or "plaintiff"), an incarcerated male acting *pro se*, brings this one-count action pursuant to 42 U.S.C. § 1983 against two parole officer defendants, Parole Officer Vaughn and Parole Officer Kevin Harmer, and two City of Ithaca police officers, Officer Cosgrove and Officer J. Balyszak alleging unreasonable search and seizure in violation of the Fourth Amendment. Compl., Dkt. No. 1. Marshall contends that when defendants stopped and searched a vehicle in which he was a passenger and subsequently located drugs and weapons inside the vehicle resulting in his arrest, they lacked the requisite reasonable suspicion to perform the search. Plaintiff argues defendants' lack of reasonable suspension violated of his Fourth Amendment right to be free from illegal searches and/or seizures. *Id*.

On December 16, 2024, Officer Cosgrove ("Cosgrove") and Officer J. Balyszak ("Balyszak")[1] (collectively the "Ithaca Police Defendants") filed a motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 33. Plaintiff did not file an opposition, and the time to do so has passed.

---

[1] Balyszak's alleged involvement in this matter, as alleged, is limited to the processing of defendants at the police station. *See* Compl.

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 1, 33.

## II. BACKGROUND

Broadly stated, Marshall alleges that, on October 11, 2023, he was arrested in Ithaca, New York on when a vehicle in which he was a passenger was stopped by City of Ithaca Police and drugs and weapons were found in a subsequent search conducted by two parole officers.[2]  *See generally*, Compl., Dkt. No. 1.

Earlier that same day, Corbin Whyte ("Whyte"), a parolee, went to the New York State Parole Office in Ithaca, New York to meet with Parole Officer Kevin Harmer ("P.O. Harmer") for a scheduled office report.  Compl., Dkt. No. 1 at 18.[3]  When this meeting ended, P.O. Harmer informed Parole Officer Vaughn ("P.O. Vaughn"), who was sitting inside of his vehicle on West State Street in Ithaca, that Whyte was departing the office.  *Id.*  P.O. Vaughn then observed Whyte enter the driver's seat of a vehicle parked near the office.  *Id.*  Aware Whyte's driver's license was suspended, P.O. Vaughn proceeded to contact Ithaca's city dispatch to request the vehicle Whyte had entered be stopped by a police officer.  *Id.*

---

[2]  Plaintiff did not allege many facts regarding the underlying event, instead providing an incident report prepared by defendant Cosgrove.

[3]  Pagination corresponds to CM/ECF headers.

Meanwhile, Cosgrove observed Whyte leaning against the same vehicle that P.O. Vaughn had ultimately watched him enter and noted that a woman was seated in the driver's seat. Compl. at 21–22. Cosgrove observed this woman move to a passenger seat in the vehicle as Whyte entered through the driver's side door. *Id.*

Thereafter, P.O. Vaughn contacted Cosgrove[4] to inform him that Whyte got into the driver's seat, that Whyte had a license, and that he was suspected of possessing a firearm. Compl. at 21–22. Cosgrove then confirmed Whyte's license was suspended and proceeded to initiate a traffic stop. *Id.*

Upon being stopped by Cosgrove, Whyte immediately exited the vehicle from the driver's side door, walking backwards and farther away from the vehicle with his hands up. Compl. at 21–22. Cosgrove ordered Whyte to re-enter the vehicle. *Id.* Whyte failed to comply, instead walking even further from the vehicle. *Id.* Whyte told Cosgrove that he was aware of his suspended license, and that he had just been working to lift the suspension. *Id.*

---

[4] Per Cosgrove's incident report, Whyte was spotted by P.O. Vaughn at or near the intersection of West State Street and Plain Street in Ithaca. Compl. at 21–22. Thereafter, P.O. Vaughn called Cosgrove to tell him Whyte was present at that location and was observed entering into the driver's seat of a vehicle. Dkt. No. 1 at 21–22. Cosgrove then circled back to stop the vehicle. *Id.*

P.O. Vaughn and P.O. Harmer, who had apparently since arrived on the scene, proceeded to search the vehicle, finding a bag concealed on or around the left rear seat containing a glock magazine with ten (10) 9-millimeter rounds of ammunition and no serial number, a clear plastic baggie containing a white substance, and a digital scale with white particles on it. Compl. at 21–22. A second bag was also found by a Parole Officer on or around the right rear seat containing a Glock with six (6) total rounds of ammunition and a pair of black gloves. *Id*. Upon locating these contents in the vehicle, Whyte, the previously observed female passenger Destynie Edwards, and Marshall, also a passenger in the vehicle, were all taken into custody and ultimately charged with two counts each of "criminal possession of a weapon 2nd" and one count each of "possession of stolen properly 4th." *Id*.   *Id*. All defendants were arraigned and remanded to jail. *Id*. As stated *supra*, defendant Balyszak's involvement in this matter was limited to processing the defendants.

On April 1, 2024, plaintiff, who was also a parolee at the time of the arrest, filed this action *pro se*, arguing that because Whyte had exited the vehicle and walked off to the side immediately after being stopped, he was no longer in "reaching distance of the vehicle" and thus the defendants lacked any basis for suspecting the vehicle contained evidence of the offense, *i.e.*, operating a vehicle with a suspended driver's license. Compl. at 4. Plaintiff

further contends that, while his expectation of privacy against warrantless searches was reduced given his parolee status, defendants' search of the vehicle was not based on information to lead them to believe that the vehicle contained weapons or drugs. *Id.*

Marshall's complaint provides no allegations as to what occurred after his indictment and remanded to jail, *i.e.*, the status of the state criminal proceedings as to him. *See generally* Compl. Plaintiff's complaint seeks compensatory and punitive damages as to all defendants.

Defendants now moved to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 33. In support of their motion, defendants argue that: (1) plaintiff has failed to allege the disposition of the underlying criminal matter, and this case may be barred by *Heck v. Humphrey*,[5] as plaintiff may be attempting to use this civil matter to attack pending criminal prosecution; (2) plaintiff has no standing to bring this claim, because he was in the vehicle as a passenger, a parolee, and not otherwise alleged permission from the owner of the vehicle to be inside it; (3) the Police Defendants had reasonable suspicion in executing the search and were permitted to stop the vehicle to facilitate the parole officers' search; (4) the

---

[5] 512 U.S. 477 (1994).

Police Defendants did not execute the search and thus cannot be held liable for an illegal search and seizure; (5) plaintiff's request for punitive damages should be stricken; and (6) in the event that the Court decides not to dismiss the complaint, it should stay this matter pending resolution in plaintiff's underlying criminal matter — insofar as it remains ongoing. Dkt. No. 33-1 at 10–25.

## III. LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v.*

*Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. DISCUSSION

### A. Request to Stay the Proceeding

As an initial matter, plaintiff has not informed this Court as to the status of his underlying state criminal charges. *See generally,* Dkt. No. 1. Further, plaintiff did not oppose the instant motion, thus missing further opportunity to apprise this Court in light of movant's arguments. *See* Dkt. No. 33. Given the uncertainty as to whether there are parallel ongoing civil and criminal proceedings dealing with overlapping subject matter, the Court will first consider the Ithaca Police Defendants' request that the matter be stayed pending the disposition of plaintiff's criminal matter.

Federal courts can stay civil proceedings pending resolution of parallel criminal prosecutions where the interests of justice warrant. *See e.g., United States v. Kordel*, 397 U.S. 1, 12, n. 27 (1970). In making this determination, courts weigh factors such as: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and

(6) the public interest.  *See Hicks v. City of New York*, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003).  Notably, in determining what course bests upholds the interests of justice, "courts have generally been concerned about the extent to which continuing the civil proceeding would unduly burden a defendant's exercise of his rights under the Fifth Amendment, which provides that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012).  Finally, staying a civil case "is an extraordinary remedy." *Hicks*, F. Supp. 2d at 241.

Having considered the factors set forth *supra*, the Court cannot impose a stay of the proceedings at this time.  Namely, the Court is unable to fully weigh the factors or grant an extraordinary remedy without any information regarding plaintiff's criminal proceeding.  The Court simply lacks information to determine, *inter alia*, the degree to which continuing civil proceedings would burden defendant's Fifth Amendment rights, if at all.  Further, and for largely the same reasons the Court will not grant a stay at this matter, the Court will reserve as to the remainder of the Ithaca Police Defendants' arguments at this time.

Accordingly, plaintiff has thirty (30) days from the date on which he is served with this Decision and Order to update this court in writing as to the status of the criminal matter related to these allegations, namely as to

whether his criminal proceedings stemming from this complaint are ongoing or, if concluded, whether or not he was convicted. Upon plaintiff's filing of this requested update onto the docket, the Ithaca Police Defendants will be permitted fourteen (14) days to answer plaintiff's complaint or otherwise move without leave of this Court. In the event that plaintiff fails to timely update the Court as to the status of his criminal proceedings, this matter will be dismissed without prejudice.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1. Plaintiff has thirty (30) days from the date he is served with this Decision & Order to inform this Court in writing as to the status and disposition, if any, of the criminal matter arising from the allegations the complaint;

2. In the event that plaintiff fails to update the Court as directed above, this matter will be DISMISSED without prejudice; and

3. Upon plaintiff's filing of an update as to the status of his criminal matter, the Ithaca Police Defendants will have fourteen (14) days to respond to plaintiff's complaint.

The Clerk of the Court is directed to terminate the pending motion, without any prejudice to movants, and set deadlines accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: September 29, 2025
       Utica, New York.